**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.T.**

**No. 21-0530** (Mercer County 19-JA-57)

## MEMORANDUM DECISION

Petitioner Father A.T., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's June 7, 2021, order terminating his parental, custodial, and guardianship rights to E.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Patricia Kinder Beavers, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to impose a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition in May of 2019 alleging that petitioner engaged in domestic violence on several occasions, including in the presence of the child. During one incident, petitioner told the child's maternal grandmother that he would "beat the fire out of" her and "grabbed a baseball bat and started swinging it around and yelling at the family." Additionally, as a result of an incident in April of 2019, the mother obtained a domestic violence protective order ("DVPO") against petitioner. According to the mother's application for the DVPO, petitioner pushed the mother and hit her in her arm and chest. Petitioner then kicked the mother while he was holding the child. While that DVPO was pending, law enforcement found petitioner outside the home "acting in a peculiar" manner with a large knife strapped to his side.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Petitioner was then arrested for violating the DVPO. According to the DHHR, petitioner had previously been incarcerated for perpetrating domestic violence on his mother in 2018.

Following the preliminary hearing and a series of continuances related, in part, to issues surrounding the child's birth certificate, petitioner stipulated to his adjudication at a hearing in February of 2020. According to the record, petitioner admitted to abusing the child by virtue of domestic violence and substance abuse. The court adjudicated petitioner of abusing the child and granted him a post-adjudicatory improvement period. At the time of adjudication, petitioner was incarcerated at the Anthony Correctional Center ("Anthony Center") on unrelated criminal charges, including fleeing with reckless indifference to the safety of others, fleeing on foot, and driving on a suspended license. In petitioner's case plan, the DHHR was clear that petitioner was receiving these services at the Anthony Center and that he "will need to complete these classes and have zero write ups within 30 days of his discharge."

At a hearing in November of 2020, the DHHR moved to terminate petitioner's parental rights after learning that he "failed and was kicked out of th[e] program" at the Anthony Center. Thereafter, the DHHR filed a written motion to terminate petitioner's parental rights. According to the motion, petitioner's case plan required him to complete services through the Anthony Center, including batterer's intervention and prevention training, parenting classes, substance abuse services, and Thinking for a Change. Petitioner was also required to obtain a GED. According to the DHHR, petitioner willfully refused to complete these services by being discharged from the Anthony Center because of his behavior. The DHHR further alleged that petitioner did not attempt to find alternative sources to complete the requirements.

The court first convened the dispositional hearing in March of 2021, but continued the matter because petitioner, who was still incarcerated, was absent. Following this hearing, petitioner was released from incarceration. In May of 2021, the court held the final dispositional hearing, during which the DHHR presented testimony concerning petitioner's noncompliance. A DHHR employee testified that petitioner did not complete the requirements of the Anthony Center, given that he was discharged from the facility because of his behavior. When asked if petitioner was compliant with batterer's intervention and prevention, parenting, and substance abuse classes, the witness responded, "I don't have records to indicate that he completed any of those, no." The witness later clarified that petitioner "[w]as discharged from the program without completing the requirements." The witness was then asked if petitioner enrolled in services upon his discharge, to which she responded "[n]ot to my understanding. When he was discharged, he was then sentenced to Southern Regional [Jail]. I don't recall how long he stayed there." According to the witness, petitioner had contacted the DHHR about services upon his release, but he failed to submit to substance abuse screens upon his release. Finally, the witness indicated that petitioner was unable to correct the conditions of abuse and neglect, given that she had "been following this case since 2018 and the patterns of domestic violence are continual." A second DHHR employee testified that the only service petitioner inquired about following his release from incarceration was visitation with the child. The witness also indicated that no referrals for services for petitioner were made following his release.

The child's mother testified that upon petitioner's release, he repeatedly called her in an attempt to communicate. This included "trying to call underneath an alias name, trying to say that

he needs [the mother] to contact him back . . . , it has stuff to do with our child and safety issues." According to the mother, she refused to reply because she did not want to continue to associate with petitioner. The mother testified to her ongoing fear of petitioner and her concern that he would "try to come after [her] in some sort of way or come after [her] family" based on his past threats.

Finally, petitioner testified that he completed several courses while at the Anthony Center, including a substance abuse course, a crime victims' course, batterer's intervention and prevention training, and Thinking for a Change. Petitioner admitted, however, that he failed to obtain his GED as required by his case plan. Petitioner acknowledged that he did not complete parenting classes, but claimed that the Anthony Center did not offer this service. Petitioner further testified that he never showed any violent tendencies toward the mother, despite the prior DVPO against him and his subsequent incarceration, and that he attempted to contact the DHHR multiple times. During his testimony, petitioner admitted that he was discharged from the Anthony Center for having "fourteen or sixteen write-ups," including several for cussing out correctional officers and directing a racial slur at one officer.

Based on the evidence, the court found that petitioner "had the opportunity to complete the things that he needed to do over the last fifteen months and that he just failed to do them." According to the court, petitioner did not complete the program at the Anthony Center and "didn't think he had to obey the rules there." Further, even though the Anthony Center did not offer parenting services, the court would have made an exception for him to complete that requirement after his completion of the Anthony Center program. However, the court believed it was clear that petitioner "did not do and will not do what he needs to do." Ultimately, the court found that there was no alternative to termination of petitioner's parental, custodial, and guardianship rights and that the same was in the child's best interest. Accordingly, the court ordered those rights terminated.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The permanency plan for the child is to remain in the custody of the nonabusing mother.

On appeal, petitioner raises only one assignment of error in which he alleges that the circuit court erred in failing to impose a less-restrictive dispositional alternative. This assignment of error, however, is based on an argument that misstates both the record and the applicable law governing termination of parental rights. In essence, petitioner argues that the circuit court heard conflicting evidence regarding whether he successfully completed the required courses while at the Anthony Center. This argument hinges entirely on a small portion of testimony from a DHHR employee at the dispositional hearing. According to petitioner, the DHHR employee who testified that he did not complete the required programs could not have known whether this was true because of a lack of documentation. Petitioner relies entirely on the following exchange: "Q: Okay. Was he compliant with BIPS class and parenting [c]lasses and substance abuse class? A: I don't have records to indicate that he completed any of those, no." According to petitioner, the witness's admission to a lack of records establishes that it was error to terminate his rights. We disagree.

Contrary to this isolated interaction, the record substantiates that the DHHR presented evidence of petitioner's failure to successfully complete his improvement period. When asked if petitioner completed the requirements of the family case plan, the DHHR's witness was clear that "[h]e did not." The witness's testimony further explained that "the family case plan says that [petitioner] is to go to the Anthony Center" where he was required to complete certain programs. Despite lacking reports concerning petitioner's progress, the witness was again clear that she "kn[e]w he was discharged from the program without completing the requirements." The witness went on to explain that petitioner was discharged from the Anthony Center for behavioral issues, a fact that petitioner confirmed when he elaborated that he was written up approximately fifteen times. By petitioner's own admission, he failed to comply with several aspects of the case plan, including his failure to remain free of write ups while at the Anthony Center, his failure to complete that program, and his failure to obtain his GED. Further, although not offered at the Anthony Center, petitioner also failed to complete parenting services and did not inquire about enrolling in this service upon his release, instead inquiring only about visitation with the child. West Virginia Code § 49-4-610(4)(A) is explicit that "[w]hen any improvement period is granted to a [parent] pursuant to this section, the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." As such, it is clear that it was petitioner's responsibility to initiate and complete all aspects of his improvement period and that he failed to do so, despite having been released from incarceration.

On appeal, petitioner relies heavily on his testimony that he completed certain courses while at the Anthony Center. However, petitioner fails to recognize that the issue of whether the circuit court believed his testimony over that of the DHHR's witnesses is one of credibility that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Because the circuit court heard evidence about petitioner's failure to successfully complete the program at the Anthony Center, we find no error.

Petitioner also argues that the burden of proof was improperly shifted to him by virtue of the requirement that he produce certificates demonstrating his successful completion of the programs at issue. This argument simply misstates the record, as petitioner was not required to

4

produce this evidence and, in fact, did not do so. Petitioner is correct that the "burden of proof in a child neglect or abuse case does not shift from the [DHHR] to the parent," and, instead, "remains upon the [DHHR] throughout the proceedings." Syl. Pt. 4, in part, *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014) (citation omitted). But petitioner is incorrect that his possible possession of certificates proving his claimed successful completion of the relevant programs and the possibility that he may have introduced those certificates into evidence would have improperly shifted the burden of proof. On the contrary, the DHHR had already introduced evidence of petitioner's failure to successfully complete his improvement period. Had petitioner wished to rebut this evidence with the introduction of the alleged certificates—evidence substantially more probative than his self-serving testimony on the issue—it would not have shifted the burden of proof to him. As such, this argument entitles petitioner to no relief.

Having found that the circuit court was presented with sufficient evidence of petitioner's failure to successfully complete his improvement period and, thus, remedy the conditions of abuse and neglect at issue, we find no error in the ultimate termination of his parental, custodial, and guardianship rights. According to petitioner, the court should have terminated only his custodial and guardianship rights, but he provides no compelling evidence to support this conclusion. Petitioner is correct that this would constitute a less-restrictive alternative, but the fact that less-restrictive options simply exist is insufficient to establish error in the court's ultimate disposition. While petitioner asserts that he did not expect the circuit court to exhaust every speculative possibility of improvement, he goes on to nonetheless assert that he should have been given additional time beyond the roughly fifteen months he was already afforded in his improvement period to demonstrate additional compliance with the terms and conditions thereof. This is exactly the sort of speculation this Court has explicitly ruled out in such proceedings. As we have explained

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Here, the evidence established that petitioner had shown no improvement to his violent tendencies since the DHHR began its involvement in 2018. As such, there was ample evidence upon which to find that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental, custodial, and guardianship rights was necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate these rights upon these findings.

Finally, petitioner argues that termination of his custodial and guardianship rights only would have been appropriate because the child was placed with the nonabusing mother and, accordingly, the child's permanency was not in jeopardy. We do not find this argument compelling, however, as we have previously explained that West Virginia Code § 49-4-604

5

"permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Here, the record is clear that petitioner's perpetration of domestic violence while in the child's presence endangered E.T., and the evidence demonstrated that these conditions were unlikely to improve. Accordingly, we find no error in the termination of petitioner's rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 7, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

6